**JOSEPH G. SANSONE**
Simona K. Suh
**Ann Marie Preissler**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**Brookfield Place**
**200 Vesey Street, Suite 400**
**New York, NY 10281-1022**
**(212) 336-5056 (Preissler)**
**Email:  preisslera@sec.gov**

**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **COMPLAINT** |
| Plaintiff, | 21 Civ. _____ (      ) |
| -against- | |
| **SEAN WYGOVSKY,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff U.S. Securities and Exchange Commission (the "Commission"), for its Complaint

against Defendant Sean Wygovsky ("Wygovsky" or "Defendant"), alleges as follows:

## SUMMARY

1.      This case involves a fraudulent front-running scheme perpetrated by Wygovsky, a

trader at a major Canada-based asset management firm ("Asset Manager A"), in several brokerage

accounts held in the United States in the names of Wygovsky's close family members (together, the

"Retail Accounts").

2.      Over the course of approximately six years, Wygovsky generated at least $3.6 million

in trading profits in the Retail Accounts by secretly trading ahead of hundreds of large securities

trades that were executed on the same days by Asset Manager A for its client accounts.

3.     Wygovsky knew or recklessly disregarded that his conduct violated his obligations to his employer and its advisory clients, including fiduciary obligations and his obligations under his employer's internal policies and code of ethics.

**VIOLATIONS**

4.     By virtue of the foregoing conduct and as alleged further herein, Defendant has violated Sections 17(a)(1) and (a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77q(a)(1) and (a)(3)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a), (c)].

5.     Unless Defendant is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

**NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT**

6.     The Commission brings this action pursuant to authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and (d)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

7.     The Commission seeks a final judgment: (a) permanently enjoining Defendant from violating the federal securities laws and rules this Complaint alleges he has violated; (b) ordering Defendant to disgorge any ill-gotten gains he received with prejudgment interest thereon pursuant to Exchange Act Sections 21(d)(5) and (d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)]; (c) ordering Defendant to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; and (d) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to Securities Act Sections 20(b), 20(d) and 22 [15 U.S.C. §§ 77t(b), 77t(d), and 77v] and Exchange Act Sections 21(d) and 27 [15 U.S.C. §§ 78u(d) and 78aa].

9.      Defendant, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

10.      Venue is proper in this District pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27(a) [15 U.S.C. § 78aa(a)].  Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District, including orders and executions of securities transactions through broker-dealers located in this District, and involve securities listed on stock exchanges located within this District.

## DEFENDANT

11.      **Wygovsky**, age 40, is a United States citizen who resides in Toronto, Ontario, Canada.  Before joining Asset Manager A in 2013 as a trader, Wygovsky held other positions in the asset management industry.  Wygovsky does not have securities licenses in the United States.

## RELEVANT ENTITY

12.      **Asset Manager A** is a major asset management firm and a hedge fund adviser incorporated and headquartered in Ontario, Canada.  It has been registered with the Commission as an investment adviser since April 2021.  Prior to April 2021, Asset Manager A was a foreign exempt reporting adviser with the Commission.

## FACTS

**A.      Wygovsky's Duties and Access to Confidential Client Trading Information**

13.      Wygovsky joined Asset Manager A in approximately 2013 as a trader, and he has held this position since then.

14.      In his role as a trader, Wygovsky was privy to material nonpublic information about the details of securities trades that his employer intended to execute for accounts of funds managed by Asset Manager A (the "Fund Accounts"), including information about those trades' size and timing.

15.      In his role as a trader, Wygovsky himself was routinely tasked by Asset Manager A with executing trade orders for the Fund Accounts, including through brokerage accounts in the United States.

16.      As an employee of Asset Manager A, Wygovsky owed a duty of trust and confidence to his employer and its clients.

17.      Under Asset Manager A's policies and code of ethics, Wygovsky was required, among other things, to comply with fiduciary obligations to Asset Manager A's advisory clients and to maintain confidentiality of client information; he was also prohibited from making personal investments in the same securities as those that Asset Manager A was buying or selling for its client accounts.

**B.      Wygovsky's Front-Running Scheme**

18.      Front-running in the securities markets involves trading ahead of large and nonpublic orders of other market participants, so as to benefit from the market impact of those large orders.

4

19.     Starting in approximately January 2015 and through at least April 2021, Wygovsky perpetrated a lucrative and fraudulent front-running scheme in the Retail Accounts, held in the United States in the names of Wygovsky's close family members, Relatives 1, 2, and 3.

20.     As part of the scheme, Wygovsky abused his access to the material and nonpublic trading information of his employer and its advisory clients and secretly traded ahead of hundreds of large securities trades that were executed by the Fund Accounts on the same days, through brokerage accounts and on trading venues located in the United States.

21.     The scheme followed a typical pattern where one or more of the Retail Accounts would buy or sell a stock either before the Fund Accounts began executing a large order for the same stock on the same side of the market, or during the time period when tranches of such a large order were being executed.  Then, typically before the Fund Accounts completed their executions, the Retail Accounts would close out their recently-established positions, nearly always at a profit.

22.     Wygovsky engaged in this pattern of trading on over 600 occasions, generating at least $3.6 million in trading profits.

23.     On many occasions, Wygovsky traded in the Retail Accounts ahead of the very trades that his employer had tasked him with executing for the Fund Accounts.

24.     Wygovsky placed the front-running trades in the Retail Accounts both directly, by logging into the Retail Accounts and placing the trades himself, and indirectly, through Relatives 1 and 2.

25.     Wygovsky placed these trades in the Retail Accounts even though he did not have formal authorization to trade through the Retail Accounts, and even though the broker-dealers where the Retail Accounts were held were not informed – either by Wygovsky or by Relatives 1, 2, or 3, – of Wygovsky's involvement in trading through the Retail Accounts.

26.     The front-running trades in the Retail Accounts were intended to, and did in fact, benefit from the short-term market impact of large orders executed by the Fund Accounts.

27.     By using material and nonpublic client order information to trade, either directly or indirectly, in the Retail Accounts as alleged herein, Wygovsky violated his duties to Asset Manager A and its clients.

28.     Wygovsky knew or recklessly disregarded that the client order information he was misusing for personal benefit was material and nonpublic, and that his front-running in the Retail Accounts violated his duties to Asset Manager A and its clients.

29.     Wygovsky directly and indirectly received profits from his fraudulent front-running scheme, including but not limited to through funds transfers from Relatives 1 and 2.

30.     Examples of Wygovsky's fraudulent trading activity in the Retail Accounts are alleged in paragraphs 31 through 60 below and are depicted in Figures 1-4.

**C.      Example 1:  Trading in the Stock of Company A on May 22, 2019**

31.     On May 22, 2019, Wygovsky front-ran a large purchase by the Fund Accounts of the common stock of Company A, a Texas-based producer of automated test equipment and virtual instrumentation software, which was listed on the Nasdaq Stock Market LLC.

32.     Between 10:33:14 a.m. and 10:34:26 a.m., one of the Retail Accounts, held in the name of Relatives 1 and 2, purchased 20,000 shares of Company A stock at an average price of $39.995 per share.

33.     At 10:37:14 a.m., a second Retail Account, held in the name of Relatives 1 and 2, purchased 5,000 shares of Company A stock at an average price of $39.970 per share.

34.     Between 10:55:29 a.m. and 3:55:57 p.m., Fund Accounts purchased 110,062 shares of Company A stock at an average price of $40.233 per share.

35.    Between 11:01:40 a.m. and 11:07:53 am, after the Fund Accounts had purchased 29,547 of their 110,062 Company A shares, the first of the two Retail Accounts sold its 20,000 shares of Company A stock at an average price of $40.405 per share.

36.    In addition, between 11:04:48 a.m. and 11:06:57 a.m., the second of the two Retail Accounts sold its 5,000 shares of Company A stock at an average price of $40.315 per share.

37.    Taken together, the two Retail Accounts realized a trading profit of $9,925.

38.    Wygovsky, alone or in concert with others, directed the purchases and sales of Company A stock in the Retail Accounts as alleged above.

**Figure 1:  Wygovsky's Front-Running in the Stock of Company A on May 22, 2019[1]**



**D.    Example 2:  Trading in the Stock of Company B on July 24, 2020**

39.    On July 24, 2020, Wygovsky front-ran a large purchase by the Fund Accounts of the common stock of Company B, a Massachusetts-based online marketplace for new and used cars, which was listed on the Nasdaq Stock Market LLC.

---

[1]    National Best Bid and Offer ("NBBO") spread is the difference between the National Best Bid ("NBB") (i.e., the highest publicly quoted price at which a market participant is willing to buy a security) and the National Best Offer ("NBO") (i.e., the lowest publicly quoted price at which a market participant is willing to sell a security).

40.     Between 12:47:39 p.m. and 1:26:42 p.m., one of the Retail Accounts, held in the name of Relative 1, purchased 10,000 shares of Company B stock at an average price of $24.960 per share.

41.     In addition, between 1:06:22 p.m. and 1:07:56 p.m., a second Retail Account, held in the name of Relatives 1 and 2, purchased 13,000 shares of Company B stock at an average price of $24.862 per share.

42.     Shortly after these purchases, between 1:39:46 p.m. and 3:59:36 p.m., Fund Accounts purchased 175,400 shares of Company B stock, at an average price of $25.111 per share.  Most of these purchases took place toward the end of the trading day, with a particularly large purchase of 43,400 shares executing at 3:53:06 p.m., while the stock's price was rising.

43.     Between 3:47:07 p.m. and 3:58:14 p.m., as purchases for the Fund Accounts were executing and the stock price was rising, the first of the two Retail Accounts sold its 10,000 shares of Company B stock at an average price of $25.092 per share.

44.     At 3:58:56 p.m., the second of the Retail Accounts sold its 13,000 shares of Company B stock at an average price of $25.240 per share.

45.     Taken together, the two Retail Accounts realized a trading profit of $6,244.

46.     Wygovsky, alone or in concert with others, directed the purchases and sales of Company B stock in the Retail Accounts as alleged above.

**Figure 2:  Wygovsky's Front-Running in the Stock of Company B on July 24, 2020**



E.    **Example 3:   Wygovsky's Front-Running in the Stock of Company C on December 15, 2020**

47.    On December 15, 2020, Wygovsky front-ran a large purchase by the Fund Accounts of the common stock of Company C, a California-based online provider of automotive aftermarket parts, which was listed on the Nasdaq Stock Market LLC.

48.    Between 9:44:39 a.m. and 9:53:44 a.m., a Retail Account in the name of Relative 3 purchased 25,000 shares of Company C stock at an average price of $12.333 per share.

49.    Throughout the trading day, from 9:58:09 a.m. until 3:59:59 p.m., Fund Accounts purchased 189,500 shares of Company C stock at an average price of $12.542 per share.

50.    Between 10:01:58 a.m. and 10:03:08 a.m., after the Fund Accounts had purchased 79,500 of their 189,500 Company C shares, the Retail Account sold its 25,000 shares of Company C at $12.620 per share.

51.    The Retail Account realized a trading profit of $7,164.

52.    Wygovsky, alone or in concert with others, directed the purchases and sales of Company C stock in the Retail Accounts as alleged above.

Figure 3:  Wygovsky's Front-Running in the Stock of Company C on December 15, 2020



### F.     Example 4:  Trading in the Stock of Company D on January 13, 2021

53.     On January 13, 2021, Wygovsky front-ran a large purchase by the Fund Accounts of the common stock of Company D, a British Columbia-based company focused on engineering, manufacturing, and supplying alternative fuel systems and components for transportation applications, which was listed on the Nasdaq Global Select Market.

54.     Between 11:25:42 a.m. and 11:27:45 a.m., one of the Retail Accounts, held in the name of Relatives 1 and 2, purchased 40,000 shares of Company D stock at an average price of $7.082 per share.

55.     Between 11:29:16 a.m. and 11:29:42 a.m., a second Retail Accounts, held in the name of Relative 1, purchased 3,000 shares of Company D stock at an average price of $7.091 per share.

56.     Between 11:33:39 a.m. and 12:12:47 p.m., Fund Accounts purchased 290,099 shares of Company D stock at an average price of $7.223 per share.

57.     Toward the end of the Fund Accounts' trading, at 12:02:25 a.m., the second Retail Account sold its 3,000 shares of Company D stock at an average price of $7.206 per share.

58. At 12:03:01 p.m., the first Retail Account sold its 40,000 shares of Company D stock at $7.22 per share.

59. Taken together, the two Retail Accounts realized a trading profit of $5,869.

60. Wygovsky, alone or in concert with others, directed the purchases and sales of Company D stock in the Retail Accounts as alleged above.

**Figure 4: Wygovsky's Front-Running in the Stock of Company D on January 13, 2021**



**FIRST CLAIM FOR RELIEF**
**Violations of Securities Act Sections 17(a)(1) and (3)**

61. The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 60.

62. Defendant, directly or indirectly, singly or in concert, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (i) knowingly or recklessly has employed one or more devices, schemes or artifices to defraud, and/or (ii) knowingly, recklessly, or negligently has engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

63.     By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, has violated, and unless enjoined, will again violate, Securities Act Sections 17(a)(1) and (3) [15 U.S.C. §§ 77q(a)(1) and (3)].

## SECOND CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rules 10b-5(a) and (c) Thereunder

64.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 60.

65.     Defendant, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, and/or (ii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

66.     By reason of the foregoing, Defendant, directly or indirectly, singly or in concert, has violated, and unless enjoined, will again violate, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a Final Judgment:

## I.

Permanently enjoining Defendant and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Securities Act Section 17(a) [15 U.S.C. § 77q(a)] and Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**II.**

Ordering Defendant to disgorge all ill-gotten gains he received with prejudgment interest thereon pursuant to Exchange Act Sections 21(d)(5) and (d)(7) [15 U.S.C. §§ 78u(d)(5) and 78u(d)(7)];

**III.**

Ordering Defendant to pay civil monetary penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; and

**IV.**

Granting any other and further relief as the Court may deem just and proper.

Dated:  New York, New York
        July 2, 2021

*Simona K. Suh*
_____
Simona K. Suh
Joseph G. Sansone
Ann Marie Preissler
Attorneys for Plaintiff
Securities and Exchange Commission
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-5056 (Preissler)
Email: preisslera@sec.gov